## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| DREW H. WRIGLEY, in his official capacity as Attorney General of North Dakota,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>    *Defendant*. | Civil No. _____ |

## <u>COMPLAINT</u>

Plaintiff, Drew H. Wrigley, in his official capacity as the Attorney General of North Dakota (Attorney General), brings this action against Defendant, the U.S. Environmental Protection Agency (EPA), to compel compliance with the Freedom of Information Act, 5 U.S.C. §552.

1.  Under the current presidential administration, federal agencies have been on an aggressive campaign to repurpose any and every possible source of statutory authority they can find to implement the current administration's policy goals—goals which the administration has been largely unsuccessful in getting enacted through Congress.

2.  The fact that so many agencies have undertaken aggressive rulemaking actions in a short amount of time to assert through rulemaking vast powers that are based on dubious statutory text is not a coincidence—they are following directives received from the current administration. *See, e.g.*, Executive Order 13990, *Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis*, 86 Fed. Reg. 7037 (Jan. 25, 2021) (directing "all executive departments and agencies … to immediately commence work to confront the climate crisis"); Executive Order 14008, *Tackling the Climate Crisis at Home and Abroad*, 86 Fed. Reg. 7619,

7622 (Feb. 1, 2021) ("It is the policy of my Administration to organize and deploy the full capacity of its agencies to combat the climate crisis to implement a Government-wide approach …").

3.      Early into this presidential administration, the Supreme Court made clear that it was improper for federal agencies to force fundamental changes to our nation's economy through bureaucratic rulemaking unless the agency could point to "clear congressional authorization" for regulating in such a manner.  *West Virginia v. EPA*, 597 U.S. 697, 732 (2022) (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)).  Specifically, the Supreme Court held that "it is not plausible that Congress gave EPA the authority" to "force a nationwide transition away from the use of coal to generate electricity" for putative climate change reasons.  *Id.* at 735.

4.      But being chided by the Supreme Court for its regulatory overreach barely fazed EPA under the current administration.  On the same day the Supreme Court issued the *West Virginia* decision, the EPA Administrator went on television, said the decision was not a setback to EPA's efforts to regulate greenhouse gases, and promised that EPA would be issuing "a suite of regulations" that will "couple the regulation of climate pollution with the regulation of health-based pollution" to further its climate agenda. *See* PBS, *EPA Administrator Michael Regan discusses Supreme Court ruling on climate change*, YouTube (June 30, 2022), bit.ly/3xuiLWf; *see also, e.g.*, White House, *Press Gaggle by Principal Deputy Press Secretary Karine Jean-Pierre & Env't Prot. Agency Adm'r Michael Regan* (Feb. 17, 2022) (stating if the Supreme Court limits EPA's ability to regulate greenhouse gas emissions, EPA will respond with "bread-and-butter regulations," such as "regulating mercury"), tinyurl.com/bddpr22j.

5.      EPA followed through with those promises on April 25, 2024, announcing "a suite of final rules" targeted at coal-fired power plants purporting to regulate public-health pollution—while claiming that it was "mak[ing] good on the Biden-Harris Administration's vision to tackle

climate change." EPA, *Biden-Harris Administration Finalizes Suite of Standards to Reduce Pollution from Fossil Fuel-Fired Power Plants* (Apr. 25, 2024), bit.ly/3VWqBkC.

6.      These rules significantly and profoundly affect North Dakota and its citizens, whose economy substantially relies on energy production on energy jobs.  And under the Freedom of Information Act, North Dakota—and its citizens—have the right to learn "'what their [federal] government is up to.'" *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). Therefore, to learn more about EPA's role in implementing the current administration's climate agenda and how EPA was advancing that agenda by promulgating a variety of rules targeting coal-fired power plants with retirement-inducing costs under a variety of different statutory authorities that are unrelated to greenhouse gas emissions and climate change, the Attorney General submitted a FOIA request to EPA in early April 2024.

7.      By statute, FOIA requires "promp[t]" action by federal agencies. 5 U.S.C. §552(a)(3)(A).  It requires agencies to "gather and review documents" and then make a substantive "determination" on a FOIA request within 20 working days.  *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (Kavanaugh, J.).  And agencies must produce responsive documents "*within days or a few weeks* of [that] 'determination,' not months or years." *Id.* (emphasis added).

8.      It's been nearly three months since the Attorney General submitted his FOIA request, and EPA has yet to make a determination on the request.  Nor has EPA produced a single responsive document.  During months of back-and-forth communications, EPA at one point suggested it would complete reviewing documents in ***2.5 years***.

9.      Despite the Attorney General's repeated, good-faith attempts to work with EPA to narrow the scope of the request and speed up the review, EPA has given inconsistent and incomplete estimates on the volume of documents to be reviewed.  Most recently, EPA estimated

that it might have roughly 9,000 records responsive to the Attorney General's FOIA request and that EPA might be able to review them at the rate of 750 documents *per month*—a rate which would take the agency approximately a full year to finish reviewing documents.

10.     FOIA doesn't permit agencies to "keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight." *CREW*, 711 F.3d at 190.  Stale information is of little value, and the agency's failure to process FOIA requests "in a timely fashion is 'tantamount to denial.'" *Wash. Post v. DHS*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006).

11.     Robust enforcement of FOIA is therefore "needed" to "hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Federal courts are FOIA's "'enforcement arm.'" *ACLU of S. Cal. v. U.S. Immigr. & Customs Enf't*, 2023 WL 8539484, at *7 (C.D. Ca. Dec. 2023). This Court has the authority to "supervise" the agency, ensure its timely compliance with FOIA, and order it to produce all documents by a date certain. *CREW*, 711 F.3d at 190; *ACLU*, 2023 WL 8539484, at *7.  Because EPA's foot-dragging violates FOIA, the Attorney General comes to this Court to respectfully seek relief ordering the EPA to review and produce responsive documents on a reasonably prompt timeline.

**JURISDICTION AND VENUE**

12.     This Court has subject-matter jurisdiction under 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §1331.

13.     Venue in this Court is proper under FOIA because Plaintiff resides in this judicial district.  5 U.S.C. §552(a)(4)(B).

**PARTIES**

14.     Plaintiff Drew H. Wrigley is the Attorney General of North Dakota and his office filed the FOIA request at issue in this case.  He is a plaintiff to this action in his official capacity as the Attorney General of North Dakota.

4

15.     Defendant EPA is an "agency" of the federal government within the meaning of 5 U.S.C. §552(f)(1).  EPA is in possession, custody, and control of the records responsive to the Attorney General's FOIA request.

## STATUTORY FRAMEWORK

16.     The Freedom of Information Act is a tool for the public to shed light on federal agencies' actions and hold them accountable for their decisions.  *See Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1208 (8th Cir. 2008).  FOIA "ensure[s] an informed citizenry, vital to the function of a democratic society."  *John Doe Agency*, 493 U.S. at 152.

17.     Under FOIA, federal agencies must "make the records promptly available to any person" upon "any request for records."  5 U.S.C. §552(a)(3)(A).

18.     FOIA is a "pro-disclosure" statute.  *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020).  So federal agencies must promptly release responsive records unless one of the nine exemptions in FOIA applies.  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).  These exemptions are "'explicitly made exclusive' and must be 'narrowly construed.'"  *Id.*  Agencies bear the burden to show that the exemptions apply.  *Evans*, 951 F.3d at 584.

19.     FOIA requires an agency to respond "within 20 [working] days . . . after the receipt of any such request," notifying the requester of the agency's "determination" whether it will comply with the request, the reasons therefor, and the right to appeal any adverse determination to the head of the agency.  5 U.S.C. §552(a)(6)(A).

20.     This 20-working-day requirement mandates "more than just an initial statement that the agency will generally comply with a request and will produce non-exempt documents and claim exemptions in the future."  *CREW*, 711 F.3d at 188.  Rather, the agency must at least "gather and review the documents" and then specifically "determine and communicate the scope of the

documents it intends to produce and withhold." *Id.* The agency must produce the documents "within days or a few weeks of a 'determination,' not months or years." *Id.*

21.     The 20-day period "shall commence" when the request is "first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency." 5 U.S.C. §552(a)(6)(A)(ii). FOIA states that "the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has requested from the requester." *Id.* §552(a)(6)(A)(ii)(I). This provision (and another provision not relevant here) are the only tolling provisions under FOIA. *See id.* §552(a)(6)(A)(ii) ("The 20-day period ***shall not be tolled*** by the agency except" under those two circumstances) (emphasis added).

22.     Despite this statutory language, EPA has also adopted its own FOIA regulations which allow the agency to "determin[e] that a request does not reasonably describe the requested records" and refuse to process the request "[i]f the requester fails to modify" it. 40 C.F.R. §2.102(b)(2). If the requester "does modify the request …, EPA will consider the request received as of the date the modification is received by EPA." *Id.*

23.     FOIA further provides that under "unusual circumstances," an agency may request an additional 10 days to make a determination. 5 U.S.C. §552(a)(4)(A)(viii)(II)(aa). But the agency must do so by "timely written notice" that "set[s] forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(4)(A)(viii)(II)(aa); *id.* §552(a)(6)(B)(i).

24.     The failure to comply with FOIA's 20-working-day (or, in unusual circumstances, 30-working-day) deadline results in two notable penalties. First, the agency may not assess any "search fees." *Id.* §552(a)(4)(A)(viii)(I) & (II). Second, the agency "cannot keep cases from

6

getting into court." *CREW*, 711 F.3d at 189.  Ordinarily, a FOIA requester must exhaust an administrative appeal before seeking a judicial remedy.  But when the agency violates FOIA's statutory deadline, the requester is "deemed to have exhausted administrative remedies" and may sue the agency in court to compel compliance with FOIA.  5 U.S.C. §552(a)(6)(C)(i).

25.     FOIA recognizes that "[b]eyond those 30 working days, an agency may still need more time to respond" to a FOIA request.  *CREW*, 711 F.3d at 189.  In such circumstances, the agency "shall notify" the requester that the request "cannot be processed within the time limit" under FOIA and may seek to "arrange … an alternative time frame for processing the request or a modified request."  5 U.S.C. §552(a)(6)(B)(ii).  When that occurs, "the administrative exhaustion requirement will not apply," and the requester may sue the agency in court.  *CREW*, 711 F.3d at 189.  The agency "may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Id*

26.     Courts are FOIA's "'enforcement arm'" and "'charged with the responsibility of ensuring the fullest responsible disclosure.'"  *ACLU*, 2023 WL 8539484, at *7.  "FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  Courts possess the broad authority to "require the agency to process documents according to a court-imposed timeline."  *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014).  Courts may "enjoin the agency from withholding agency records" and "order the production of any agency records improperly withheld from the complainant."  5 U.S.C. §552(a)(4)(B).  And courts routinely exercise this authority to ensure reasonably prompt *production* of public records—at rates much higher than the lackadaisical 750 records *reviewed* per month which EPA has signaled it intends to apply to the Attorney General's request.  *See, e.g.*,

*Pub. Health & Med. Pros. for Transparency v. FDA*, 2022 WL 90237, at *2 (N.D. Tex. Jan. 6 2022) (production rate of "55,000 pages every 30 days"); Minute Order, *Urban Air Initiative, Inc. v. EPA*, No. 1:15-cv-1333-ABJ (D.D.C. Jan. 13, 2016) ("more than 15,000 records" in two months); *ACLU v. DOD*, 339 F. Supp. 2d 501, 503, 505 (S.D.N.Y. 2004) (one month to "produce or identify all responsive documents" after reviewing "between 17,000 and 20,000 pages"); *NPR, Inc. v. U.S. Dep't of Treasury*, 2019 WL 12262726, at *2 (D.D.C. Aug. 23, 2019) (order to review "3,000 documents per month"); *Villanueva v. DOJ*, 2021 WL 5882995, at *4 (S.D. Fla. Dec. 13, 2021) (order to process "5,125 pages per month").

27.     FOIA also allows the court to assess "reasonable attorney fees and other litigation costs reasonably incurred in any case … in which the complainant has substantially prevailed." 5 U.S.C. §552(a)(4)(E); *see also Zarcon, Inc. v. NLRB*, 578 F.3d 892, 894 (8th Cir. 2009).

## FACTUAL ALLEGATIONS

28.     On April 5, 2024, the Attorney General, through his staff, submitted the FOIA request to EPA.  *See* Ex. A (North Dakota FOIA Request). The Attorney General asked EPA to produce records that are responsive to the following topics:

| Number | Topics |
|--------|--------|
| 1 | Documents and/or communications discussing or relating to EPA's CAA toolbox or CAA tool kit between June 30, 2022 and April 3, 2023. |
| 2 | Documents and/or communications to, from, and copying Joseph Goffman that relate to power sector greenhouse gas reductions between June 30, 2022 and April 3, 2023. |
| 3 | Documents and/or communications including the following search terms between June 30, 2022 and April 3, 2023:<br><br>• (power sector) & ((suite) /5 ((rules) or (regulations) or (opportunities) or (policies)))<br><br>• ((MATS) or (mercury) or (Air Toxics)) & ((climate change) or (climate crisis) or (greenhouse gas) or (CO2) or (carbon)) |

| | |
|---|---|
| | • ((Regional Haze) or (Particulate Matter) or (PM2.5) or (coal ash) or (CCR) or (NAAQS)) & ((climate change) or (climate crisis) or (greenhouse gas) or (CO2) or (carbon))<br><br>• ((coal) or (lignite)) & ((retire) or (shut down) or (close)) |
| 4 | Documents and/or communications discussing EPA's power sector climate strategy between June 30, 2022 and April 3, 2023. |

29.     The Attorney General's FOIA request concerns EPA's motivations and bases for using its various regulatory authorities to impose retirement-inducing costs on coal-fired power plants for putative climate change reasons, in an apparent attempt to end-run the *West Virginia v. EPA* decision.  This request concerns issues that are of paramount and profound importance to North Dakota and its citizens.

30.     On the same day, April 5, 2024, EPA acknowledged receipt of the FOIA request and stated that it assigned the FOIA request to the Office of Air and Radiation for processing.  *See* Ex. B (EPA Acknowledgement).

31.     On April 10, 2024, EPA sent an email seeking clarification on Topic 1, asking what "CAA toolbox" is and which office within EPA may have the referenced records. *See* Ex. C (Clarification Email Thread), at 5.

32.     On April 11, 2024, the Attorney General responded to EPA, explaining that the term "CAA toolbox" had been expressly referenced in a previous FOIA production by EPA. *See* Ex. C, at 3-4. Specifically, the Attorney General pointed to a July 17, 2022, email by Mr. Joseph Goffman, an EPA official, in which Mr. Goffman stated that he edited a document according to a "more informed understanding of [the] EPA's CAA toolbox, authorities, and mission, and of the role of [EPA's] federal government partners." Ex. C, at 4.

33.     The Attorney General did not receive any response from EPA for two weeks.

34.     Then, on April 25, 2024, EPA emailed the Attorney General, seeking further clarification and asking the Attorney General to modify his request.  *See* Ex. C, at 2-3.

35.     For Topic 1, EPA claimed that "[t]here [was] no CAA toolbox or CAA tool kit as framed" and that the phrase as used in the July 2022 email was merely "us[ed] to describe the tools that [EPA] has for implementing the Clean Air Act."  Ex. C, at 2.  For Topic 2, EPA confirmed that it will conduct a search of Mr. Goffman's emails, but it suggested that it would use a search string that it created.  Ex. C, at 2-3.  For Topic 3, EPA asked the Attorney General to provide a list of custodians. In addition, EPA suggested that it would use the search strings that it created.  Ex. C, at 3.  For Topic 4, EPA asked the Attorney General to provide a list of custodians and to suggest search terms/strings that it may use.  Ex. C, at 3.

36.     On April 29, 2024, the Attorney General responded to EPA's modification request. *See* Ex. C, at 1-2.

37.     For Topic 1, the Attorney General explained that EPA should produce responsive documents that "relat[e] to" the CAA toolbox, including the "Power Sector GHG Reductions" document referenced in the July 2022 email.  Ex. C, at 1.  For Topic 2, the Attorney General suggested using three additional search strings to better capture the essence of the FOIA request. Ex. C, at 1-2.  For Topic 3, the Attorney General identified 11 custodians.  Ex. C, at 2.  For Topic 4, the Attorney General suggested using the same custodian list as Topic 3 and provided a search string that EPA could use.  Ex. C, at 2.

38.     On May 2, 2024, EPA sent another email.  Ex. C, at 1.  For Topic 1, EPA confirmed it would look for responsive documents. For Topic 2, EPA explained that it further modified the request and identified about 3,000 responsive documents.  EPA didn't provide an update regarding Topics 3 and 4.  EPA suggested that it would later file a "10 day extension."  Ex. C, at 1.

39.     EPA never sought a 10-day extension.

40.     EPA failed to provide the Attorney General with a "determination" within 20 working days, regardless of whether that deadline is measured from April 5 (when EPA received the request, *see* 5 U.S.C. §552(a)(6)(A)(ii)) or April 29 (when EPA received the Attorney General's first modification, *see* 40 C.F.R. §2.102(b)(2)).

41.     On June 5, 2024—past FOIA's 20-working-day deadline—EPA sent an email stating that it identified about 16,000 potentially responsive records. Ex. D (Alternative-Timeline Email Thread).  EPA stated that it would "review 500 documents a month" and "provide rolling productions monthly."  Ex. D, at 4.

42.     Under this extremely lackadaisical processing rate, it would have taken more than 2.5 years to complete reviewing the potentially responsive documents.

43.     EPA stated that the Attorney General could seek to "modify or narrow [the] request so that it may be processed sooner."  Ex. D, at 4.

44.     On June 21, 2024, the Attorney General, through counsel, responded to EPA's suggested alternative timeline.  Ex. D, at 2-3.  The Attorney General explained that the 2.5-year processing timeline violated FOIA and was unacceptable.  The Attorney General also expressed the desire to find a way for EPA to complete the review in two months and offered to narrow to modify the FOIA request by reducing the "word range" for the search strings—many of which were created by EPA in the first place.  The Attorney General asked for EPA's response to the proposed narrower search protocol by June 25, 2024, including a breakdown of "how any responsive records exist for each topic."  Ex. D, at 3.

45.     On June 26, 2024, inconsistent with its prior estimate, EPA stated that reducing the word ranges by half "brought the total collection from 34,429 to 19,566."  Ex. D, at 2.  After

performing de-duplications and grouping the email threads, EPA estimated about 8,800 documents. Ex. D, at 2.  EPA did not provide a breakdown of how many responsive records exist for each topic and stated that it would not be able to process the records within two months as requested by the Attorney General.  Ex. D, at 2.

46.    On the same day, the Attorney General sought clarification regarding the discrepancy between the June 5 estimate of 16,000 records and the June 26 estimate of 34,429 records.  Ex. D, at 1-2.  In an attempt to further narrow the search and provide guidance to EPA on how to prioritize the review of responsive documents, the Attorney General asked EPA: (1) how the current 8,800 estimate broke down into each topic, search term, and custodian; and (2) when EPA anticipated completing processing the documents. Ex. D, at 1-2.

47.    On June 27, 2024, EPA once again provided inconsistent information—this time, a supposed breakdown of the documents by custodians and search strings.  Ex. D, at 1.  None of the breakdown charts corresponded to EPA's own 8,800 estimate.

48.    For instance, EPA's breakdown by custodians yielded 17,621 items, which did not match EPA's prior estimates.  Ex. D, at 5.

| Location | Items |
|---|---|
| Carbonell.Tomas@epa.gov | 2,640 |
| Culligan.Kevin@epa.gov | 2,369 |
| .Goffman.Joseph@epa.gov | 2,083 |
| Nunez.Alejandra@epa.gov | 2,082 |
| Tsirigotis.Peter@epa.gov | 1,610 |
| Birnbaum.Rona@epa.gov | 1,507 |
| Giles.Cynthia@epa.gov | 1,462 |
| .Profeta.Timothy@epa.gov | 1,412 |
| Benish.Sarah@epa.gov | 1,138 |
| .grundler.christopher@epa.gov | 821 |
| Kocchi.Suzanne@epa.gov | 497 |
| **Total** | 17,621 |

49.     EPA's breakdown by search strings was even more inconsistent. It yielded over

45,000 items, which also did not match EPA's prior estimates.  Ex. D, at 6-8.

| Search String | Items |
|---|---|
| ((((((("power sector") AND ((("suite") NEAR(5) ((("rules") OR ("regulation*") OR ("opportunities") OR ("policies"))))))) OR ((((("MATS") OR ("mercury") OR ("Air Toxic*"))) NEAR(250) ((("climate change") OR ("climate crisis") OR ("greenhouse gas*") OR ("CO2") OR ("carbon") OR ("Regional Haze") OR ("Particulate Matter") OR ("PM2.5") OR ("coal ash") OR ("CCR") OR ("NAAQS")))))) OR ((((("climate change") OR ("climate crisis") OR ("greenhouse gas*") OR ("CO2") OR ("carbon") OR ("coal") OR ("lignite"))) NEAR(250) ((("retire*") OR ("shut down") OR ("close*"))))) OR ((("power sector") NEAR(250) ("strategy*"))))) AND (((received>="30-Jun-2022 00:00:00 AM") AND (received<"04-Apr-2023 00:00:00 AM")))) | 17,621 |
| (("power sector") AND ((("suite") NEAR(5) ((("rules") OR ("regulation*") OR ("opportunities") OR ("policies"))))) AND (((received>="30-Jun-2022 00:00:00 AM") AND (received<"04-Apr-2023 00:00:00 AM")))) | 344 |
| ((((((("MATS") OR ("mercury") OR ("Air Toxic*"))) NEAR(250) ((("climate change") OR ("climate crisis") OR ("greenhouse gas*") OR ("CO2") OR ("carbon") OR ("Regional Haze") OR ("Particulate Matter") OR ("PM2.5") OR ("coal ash") OR ("CCR") OR ("NAAQS")))))) AND (((received>="30-Jun-2022 00:00:00 AM") AND (received<"04-Apr-2023 00:00:00 AM")))) | 7,126 |
| ((((((("climate change") OR ("climate crisis") OR ("greenhouse gas*") OR ("CO2") OR ("carbon") OR ("coal") OR ("lignite"))) NEAR(250) ((("retire*") OR ("shut down") OR ("close*")))))) AND (((received>="30-Jun-2022 00:00:00 AM") AND (received<"04-Apr-2023 00:00:00 AM")))) | 12,637 |
| (((("power sector") NEAR(250) ("strategy*"))) AND (((received>="30-Jun-2022 00:00:00 AM") AND (received<"04-Apr-2023 00:00:00 AM")))) | 2,233 |
| ((((((((("Greenhouse gas reduction*") OR ("GHG*"))) NEAR(250) ("power sector"))) OR ((("greenhouse gas") NEAR(50) ("reduc*"))) OR ((("GHG") NEAR(50) ("reduce*"))) OR ((((("greenhouse gas*") OR ("GHG*"))) NEAR(250) ("emission"))))) AND (((received>="29-Jun-2023 00:00:00 AM") AND (received<"05-Apr-2024 00:00:00 AM")))) | 1,945 |
| ((((((("Greenhouse gas reduction*") OR ("GHG*"))) NEAR(250) ("power sector"))) AND (((received>="29-Jun-2023 00:00:00 AM") AND (received<"05-Apr-2024 00:00:00 AM")))) | 325 |
| (((("greenhouse gas") NEAR(50) ("reduc*"))) AND (((received>="29-Jun-2023 00:00:00 AM") AND (received<"05-Apr-2024 00:00:00 AM")))) | 1,311 |
| (((("GHG") NEAR(50) ("reduce*"))) AND (((received>="29-Jun-2023 00:00:00 AM") AND (received<"05-Apr-2024 00:00:00 AM")))) | 477 |
| ((((((("greenhouse gas*") OR ("GHG*"))) NEAR(250) ("emission"))) AND (((received>="29-Jun-2023 00:00:00 AM") AND (received<"05-Apr-2024 00:00:00 AM")))) | 1,208 |
| Total | 45,227 |

13

50.    EPA stated: "[d]epending on resources, we may be able to review up to 750 records per month which would make the anticipated timeline approximately 12 months." Ex. D, at 1.

51.    The Attorney General once again asked EPA to clarify the discrepancy between its estimates. Ex. D, at 1.  And the Attorney General also again sought to narrow the scope of its request by reducing the word range from "NEAR 250" to "NEAR 60," and asked EPA to provide a breakdown based on the narrowed search and whether it would be able to complete the narrowed request within two months.  Ex. D, at 1.

52.    The Attorney General's counsel received an automatic "out of the office" email, stating that EPA's FOIA specialist will be back in the office on Monday, July 1, 2024. Ex. D, at 8. Upon receiving the "out of office" email, the Attorney General's counsel forwarded his email to the FOIA specialist's colleague, who stated that the FOIA specialist would respond once she returns to work. Ex. D, at 9.

53.    At the time of filing this complaint, the Attorney General has not received any further response or follow up from EPA.

## CLAIM FOR RELIEF

### COUNT 1
### Failure to Comply with FOIA (5 U.S.C. §552)

54.    The Attorney General repeats and re-alleges the allegations in the foregoing paragraphs as if set forth fully herein.

55.    On April 5, 2024, the Attorney General properly requested records within EPA's possession, custody, and control.  EPA was required to conduct a reasonable search for—and "make … promptly available"—records responsive to the FOIA request.  5 U.S.C. §552(a)(3)(A).

56.    EPA failed to communicate its "determination" as to the FOIA request within 20 working days.  This 20-working-day requirement mandates "more than just an initial statement

that the agency will generally comply with a request and will produce non-exempt documents and claim exemptions in the future." *CREW*, 711 F.3d at 188.  To comply with FOIA, the agency must at least "gather and review the documents" and then specifically "determine and communicate the scope of the documents it intends to produce and withhold." *Id.*

57.     The agency must produce the documents "within days or a few weeks of a 'determination,' not months of years." *Id.*

58.     To date (nearly three months after the request was submitted), EPA has failed to produce any documents responsive to the Attorney General's FOIA request—and has suggested in correspondence it may not finish producing responsive documents for years.

59.     The Attorney General has constructively exhausted the administrative remedies under 5 U.S.C. §552(a)(6)(C)(i).  Under FOIA, the 20-working-day timeclock commenced on April 5, 2024, when EPA acknowledged receipt of the FOIA request and assigned it to its Office of Air and Radiation.  The 20-working-day period may have been tolled for one day when EPA sought clarification on April 10, to which the Attorney General responded on April 11. *See* 5 U.S.C. §552(a)(6)(A)(ii)(I) (allowing for tolling once to seek clarification).  Accounting for one tolled day, EPA failed to provide a determination by May 6, 2024.

60.     Alternatively, EPA failed to comply with the 20-working-day deadline even if the deadline is calculated under EPA's regulations.  EPA's regulations purport to permit EPA to start the 20-working-day clock when EPA receives modifications to the FOIA request from the requester. *See* 40 C.F.R. §2.102(b)(2).  This regulation is unlawful to the extent that it contradicts FOIA's text, which states that the 20-working-day period "shall commence" when the request is "first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency." 5 U.S.C. §552(a)(6)(A)(ii).

But even under EPA's unlawful regulations, the 20-working-day period would have begun on April 29, 2024, when EPA received the Attorney General's modifications, resulting in a May 28, 2024, deadline.  But EPA failed to provide a determination even by May 28, 2024.

61.     In addition to failing to meet FOIA's statutory deadline, EPA has stated it will review only 500-750 documents per month, has provided inconsistent and incomplete estimates regarding the number of responsive records, and has indicated that it does not intend to finish producing documents responsive to the FOIA request for upwards of a year or more.

62.     This Court has broad authority to order EPA to promptly produce all responsive documents by a court-imposed deadline.  *See Clemente*, 71 F. Supp. 3d at 269.

63.     To the extent EPA invokes any of the applicable FOIA exemptions, the Attorney General is entitled to an order compelling EPA to produce sufficiently detailed indexes justifying withholding of responsive records and to challenge EPA's invocation of FOIA exemptions.

## PRAYER FOR RELIEF

**WHEREFORE**, the Attorney General asks this Court to enter judgment in his favor and to provide the following relief:

(1) A declaratory judgment that EPA failed to comply with the time limit under 5 U.S.C. §552(a)(6) and may not assess search fees under 5 U.S.C. §552(a)(4)(viii);

(2) An order compelling EPA to promptly make available the non-exempt documents responsive to the Attorney General's FOIA request and to promptly provide an index for any withheld documents;

(3) Attorney's fees and costs pursuant to 5 U.S.C. §552(a)(4)(E); and

(4) All other relief to which the Attorney General is entitled.

Dated: July 2, 2024

Respectfully Submitted,

DREW H. WRIGLEY
Attorney General

/s/ *Philip Axt*

TYLER R. GREEN*
Special Assistant Attorney General
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

PHILIP AXT
Solicitor General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

FRANK H. CHANG**
Special Assistant Attorney General
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
frank@consovoymccarthy.com

*Counsel for Plaintiff*

*\*Application for pro hac vice admission forthcoming*
*\*\*Application for admission forthcoming*