IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DREW H. WRIGLEY, in his official capacity as Attorney General of North Dakota,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Defendant*. | Civil No. 1:24-cv-129-DLH-CRH |

**REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION OR, ALTERNATIVELY, FOR SCHEDULING ORDER**

**(RELIEF REQUESTED BY AUGUST 30, 2024)**

## INTRODUCTION

In its response brief, EPA offers *yet another* inconsistent estimate on the number of potentially responsive documents. Contradicting its previous estimate of 6,600 documents, EPA now says that there are at least 9,269 documents for Topics 2-4 and that it doesn't know how many documents are potentially responsive to Topic 1. It is now more than *four months* since the Attorney General submitted his FOIA request, and it isn't acceptable for EPA to still not have an accurate estimate. At its proffered review rate of 825-documents-per-month rate, EPA would have the Attorney General wait for at least another 11 months (or more) to receive responsive records.

EPA doesn't dispute its failure to comply with its statutory 20-day deadline to issue a "determination" and to "promptly" produce responsive documents thereafter. EPA also doesn't dispute that staleness constitutes irreparable injury in the FOIA context and that the Attorney General's ability to use the requested information will become materially lessened or permanently lost after Congress adjourns and the Presidential election occurs. And although EPA claims that to timely comply with the Attorney General's request it would have to shift resources and FOIA personnel, it doesn't claim that timely compliance is unachievable.

FOIA "simply does not countenance" a scenario in which EPA can "keep FOIA requests bottled up in limbo for months or years on end." *CREW v. FEC*, 711 F.3d 180, 187 (D.C. Cir. 2013) (Kavanaugh, J.). To prevent staleness, the Court should render a decision on the Attorney General's pending motion no later than August 30, 2024, and direct EPA to produce all responsive documents within 30 days of the order. To the extent the Court is inclined to permit slower production, any timeline should account for the fact that EPA has already been sitting on the Attorney General's request for more than *four months without* producing *a single document,* and that by late-September (when the Attorney General asks the Court to direct EPA to finish production), EPA will have been sitting on the Attorney General's request for nearly six months.

1

## ARGUMENT

I. **The Court should issue a preliminary injunction ordering timely production.**

A. **The Attorney General is likely to succeed on the merits.**

EPA doesn't dispute that it failed to comply with FOIA's 20-day deadline to issue a determination. *See* Opp. at 7-9. Although the agency doesn't have to produce the documents within 20 working days, it must produce them "promptly"—meaning "within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 187. If the agency "miss[es] the statutory deadlines" to issue a determination, it "has violated FOIA," and the requester is "*certain* to succeed on the merits of its claim that the [agency] owes it a determination on its request." *Am. Oversight v. U.S. Dep't of State*, 414 F.Supp.3d 182, 186 (D.D.C. 2019) (emphasis added).

Though it missed FOIA's 20-day deadline, EPA offers two reasons to claim there hasn't been "any violation of FOIA." Opp. at 9. ***First***, EPA says that the Attorney General "has already received all the relief to which he is entitled," because EPA decided to "review [the] potentially responsive records at a pace of 825 records per month." Opp. at 7. To comply with FOIA, however, EPA was required to do more than "simply stat[e] [a] future intent to produce some non-exempt documents." *CREW*, 711 F.3d at 187. Instead, it was required to make a "determination" on the FOIA request within 20 business days and then make the records "promptly available." *Id.* at 188 (citing 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)). The 20-day deadline has long passed, yet EPA still hasn't produced a single document. All that EPA has done is "simply stat[e], in essence, that it will produce documents … in the future," *id.* at 186, by reviewing at pace of 825 documents per month. This mere statement doesn't satisfy FOIA's 20-day requirement. *Id.* at 187.

***Second***, EPA also says that the Attorney General is not likely to succeed on the merits because he didn't "request expedited review." Opp. at 8 (citing 5 U.S.C. §552(a)(6)(E)(i)(I)). There are a couple of problems with this argument. First, expedited processing doesn't alter the

2

baseline requirement for agencies to issue a determination within 20-working days and "promptly" produce the documents thereafter. 5 U.S.C. §552(a)(3)(A); *id.* §552(a)(6)(A)(i). Second, the Attorney General can't be faulted for not seeking expedited processing because he <u>couldn't</u> seek expedited processing under EPA's own FOIA regulations. *See* 40 C.F.R. §2.104(g)(1) (expedited processing only allowed by EPA for situations involving threat to life or safety, a person primarily engaged in disseminating information, or "an environmental justice-related need"). Regardless, because EPA missed the 20-day deadline to issue a determination and failed to promptly produce documents thereafter, it violated FOIA. *Am. Oversight*, 414 F.Supp.3d at 186.

**B.     The Attorney General is likely to suffer irreparable injury.**

As explained in his motion, the value of the requested records will exponentially vanish if EPA succeeds in keeping them obscured from public view until after Congress adjourns and the Presidential election takes place. Mot. at 11-14. In the FOIA context, staleness constitutes irreparable injury. *Brennan Ctr. v. Dep't of Com.*, 498 F.Supp.3d 87, 100 (D.D.C. 2020). And EPA doesn't dispute that, by next year, the Attorney General's ability to use the requested information to inform the public about EPA's "suite" of rules in connection with the pending Congressional Review Act resolutions and before the 2024 Presidential election will be "lost." *Id*. at 101.

Nevertheless, EPA raises a host of arguments regarding irreparable injury. ***First***, EPA asserts the Attorney General failed to provide evidence "what he actually intends to do with the records, how he intends to do it, or why he cannot" do so without the records, Opp. at 10, and claims the Attorney General needed to submit a declaration to establish such points, Opp. at 13.

Neither of those assertions is correct. The Attorney General has told EPA "what he actually intends to do with the records," *cf.* Opp. at 10, explaining that he intends to use the requested information "to educate … the public about EPA activities [that] affect the State of North Dakota, its economy, and the entities that transact business within it." Compl.-Ex. A, at 2. Congress is

3

currently considering Congressional Review Act resolutions to overrule the "suite" of EPA regulations that are the subject of the FOIA request. *See* Mot. at 12-13. That "several bills are pending in Congress" is judicially noticeable. *Yeboah v. DOJ*, 345 F.3d 216, 222 n.3 (3d Cir. 2003). It's also judicially noticeable that Congress will adjourn sine die at the end of this year and that the Presidential election will occur on November 5, 2024. The Court doesn't need to know *how* the Attorney General would use the information to find irreparable harm; it only needs to know *that* he *wouldn't be able to* use the information. *See Brennan Ctr.*, 498 F.Supp.3d at 101-02. And contrary to EPA's assertions, courts *do* issue injunctions in FOIA cases without requiring affidavits specifically detailing how the information will be used. *See, e.g.*, *Wash. Post v. DHS*, 459 F.Supp.2d 61, 76 (D.D.C. 2006). Indeed, in *Center for Public Integrity v. DOD*, the court granted an injunction compelling FOIA production where the plaintiff explained irreparable harm in a single short paragraph in the brief, without any affidavits. *See* 411 F.Supp.3d 5, 15 (D.D.C. 2019).

**Second,** EPA suggests the Attorney General won't be harmed by EPA's delay because Congress "has abundant tools to obtain records." Opp. at 10. But whether Congress may obtain the same information through other mechanisms is irrelevant; the Attorney General has the statutory right to obtain the information under FOIA. And courts have issued injunctions in FOIA cases even though Congress had already issued subpoenas to obtain the same information. *See, e.g., Ctr. for Pub. Integrity*, 411 F.Supp.3d at 12; *Am. Oversight*, 414 F.Supp.3d at 187.

**Third**, EPA suggests the Attorney General won't be irreparably harmed because he can (and has) challenged the "suite" of regulations in court. Opp. at 12. This argument misses the point entirely. FOIA gives the Attorney General the statutory right to obtain the requested public records, regardless of whether he can also bring suit to challenge the related rules.

**Fourth**, EPA insinuates that the Attorney General's FOIA request isn't important enough

to warrant this Court's attention. Opp. at 13. But if information relating to President Trump's impeachment, COVID-19 policies for noncitizen detainees, Census data, and White House visitor log was sufficiently urgent and important, *see* Mot. at 10, then so is information about the bases for this Administration's aggressive climate agenda and the promulgation of rules that will wreak havoc on North Dakota's economy, threaten our power grids, and destroy the livelihoods and way of life for entire communities across the State. The records from EPA upon which the Attorney General seeks to shine light on are not some trifling affair.

### C. The balance of equities favors issuing a preliminary injunction.

EPA incorrectly says that the balance of equities doesn't favor a preliminary injunction or mandated production schedule for a variety of reasons, all of which are mistaken.

*First*, EPA says that other FOIA requesters will be harmed because timely responding to the Attorney General's request will require EPA to shift resources to prioritize the request. Opp. at 15. But "hardship on other FOIA requesters is not a bar to relief." *Brennan Ctr.*, 498 F.Supp.3d at 103. Moreover, EPA indicates that it *could* shift resources to timely comply. *See* Opp. at 15. If timely compliance were impossible, EPA should have moved for an "*Open America*" stay, which—if the agency can clear a high evidentiary bar—allows this Court to "retain jurisdiction and allow[s] the agency additional time to complete its review." *CREW*, 711 F.3d at 185. That EPA didn't seek such a stay here confirms that EPA *can* timely comply with the Attorney General's request. It just doesn't want to. EPA's attempt to distinguish the cases requiring similar rates of production also fails. *Cf.* Opp. at 16-17. Those cases demonstrate that agencies can timely process documents when required (far more than the 850 documents per month EPA indicates it is willing to eventually review and produce in this case absent Court intervention).

*Second*, EPA incorrectly suggests that it is improper to preliminarily enjoin agencies to timely produce documents because doing so amounts to giving "full relief on the merits from the

5

outset." Opp. at 6. That suggestion is belied by the many FOIA decisions enjoining agencies to produce documents by a date certain. *See* Mot. at 10-11. Moreover, it ignores the fact that FOIA cases typically involve two types of claims: first, claims to compel the agency to timely produce the documents, and second, claims disputing the agency's improper withholding or redaction of documents. *See* Mot. at 19 (citing *Am. Oversight*, 414 F.Supp.3d at 186). The Court's entry of a timely production schedule is not going to resolve likely disputes over the documents that will be withheld or redacted by the agency, and those disputes cannot even begin until the agency is compelled to produce its responsive documents in the first place.

***Third***, EPA blames the Attorney General for "creat[ing] the alleged exigency" by submitting the FOIA request in April 2024. Opp. at 16. This, too, is incorrect for several reasons. For one, the exigency was created by EPA, not the Attorney General. If EPA complied with FOIA's 20-day deadline, the Attorney General would have received a determination in May 2024 and obtained the documents "promptly" thereafter, leaving him ample time to use the information. FOIA's 20-day deadline is the law of the land like any other federal statute, and "[i]f the Executive Branch does not like it or disagrees with Congress's judgment, it may so inform Congress and seek new legislation." *CREW*, 711 F.3d at 190. Until then, this Court should enforce FOIA's unambiguous requirements. And for another, as a factual matter, EPA did not promulgate the "suite" of final rules that are the subject of the FOIA request—which are likely to devastate the coal industry in North Dakota and around the country by pretextually using a variety of statutory authorities that have nothing to do with climate change to achieve climate change-related ends—until April 2024.

## II. Alternatively, the Court should issue a scheduling order requiring EPA to produce its responsive documents within 30 days of the Court's order.

Even if the Court doesn't issue a preliminary injunction, it can—and should—issue a scheduling order accomplishing similar ends. *See* Mot. at 16-19. EPA doesn't dispute this Court's

6

inherent authority to issue such an order. Nor does EPA dispute the fact that the Attorney General won't be able to contest the adequacy of EPA's search or the propriety of any withholdings unless and until EPA first produces the responsive documents. *See* Mot. 17-18.

Here, EPA has now estimated that approximately 9,000 potentially responsive documents exist, and it has claimed that it is likely to identify substantially more documents. Opp. at 5. At 825 documents per month, the Attorney General would have to wait for at least another 11 months to receive the records requested (in addition to the four months that have already passed).

Other than citing some inapposite prisoner-request cases, EPA hasn't offered any reason why *this* litigation should drag on. Opp. at 19. Effective case management—and the importance of the requested information—warrant expeditious processing of the documents. EPA also incorrectly asserts that this Court cannot require the expeditious preparation of a *Vaughn* index. Opp. at 20. But courts can—and do—require agencies to timely prepare a *Vaughn* index to enable the parties to decide whether further litigation over the withholdings is warranted. *See, e.g., FGA v. DOJ*, No. 2:22-cv-534, Doc. 27 (Nov. 28, 2022) (M.D. Fla.). Such docket management decisions are well within the Court's discretion.

## CONCLUSION

The Attorney General respectfully requests that no later than August 30, 2024, the Court issue a preliminary injunction or a scheduling order directing EPA to produce all responsive documents and a *Vaughn* index within 30 days of the order.

If the Court is inclined to permit slower production, the Attorney General respectfully asks the Court to consider the fact that EPA has already been sitting on the Attorney General's request for approximately *four months* *without* producing *a single document*, and that by late-September EPA will have been sitting on the Attorney General's request for nearly six months.

7

Dated: August 6, 2024                              Respectfully Submitted,

D<small>REW</small> H. W<small>RIGLEY</small>
Attorney General

/s/ *Frank H. Chang*
Tyler R. Green*
S<small>PECIAL</small> A<small>SSISTANT</small> A<small>TTORNEY</small> G<small>ENERAL</small>
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Frank H. Chang
S<small>PECIAL</small> A<small>SSISTANT</small> A<small>TTORNEY</small> G<small>ENERAL</small>
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
frank@consovoymccarthy.com

P<small>HILIP</small> A<small>XT</small>
Solicitor General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Plaintiff*

**Application for admission forthcoming*